**EXHIBIT A**

**THE PLAN**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HAMPSHIRE GROUP, LIMITED, | ) | Case No.: 16-12634 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HAMPSHIRE BRANDS, INC., | ) | Case No.: 16-12635 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HAMPSHIRE INTERNATIONAL, LLC, | ) | Case No.: 16-12636 (BLS) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HAMPSHIRE GROUP, LTD., *ET AL.*

BLANK ROME LLP
Michael D. DeBaecke (DE No. 3186)
Bryan J. Hall (DE No. 6285)
1201 N. Market Street
Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

*Counsel for Hampshire Group, Ltd.,*
*Hampshire Brands, Inc., and*
*Hampshire International, LLC*
*as Debtors and Debtors-in-Possession*


Dated: Wilmington, Delaware
        August 17, 2017

PACHULSKI STANG ZIEHL & JONES LLP
Richard E. Mikels (admitted *pro hac vice*)
Ilan D. Scharf (admitted *pro hac vice*)
Peter J. Keane (DE No. 5503)
Steven W. Golden, Esquire
919 North Market Street
17th Floor
Wilmington, Delaware  19801
Telephone: (302) 652-4100

*Counsel for the Official Committee of*
*Unsecured Creditors of Hampshire*
*Group Ltd., et al.*

# TABLE OF CONTENTS

**Page**

I. DEFINITIONS ........................................................................................................ 1

II. RULES OF INTERPRETATION ........................................................................ 9

III. PLAN OBJECTIVES.......................................................................................... 10

IV. METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS; GENERAL
PROVISIONS .................................................................................................... 11

    A.    General Rules of Classification ........................................................... 11
    B.    Holders of Claims Entitled to Vote..................................................... 11
    C.    Administrative Expense Claims, Professional Fee Claims,  Priority
Employee Claims, and Priority Tax Claims ....................................... 11

V. TREATMENT OF CLAIMS AND INTERESTS ................................................ 12

    A.    Allowance and Treatment of Administrative Expense Claims, Priority
Employee Claims, Professional Fee Claims, and Priority Tax Claims............... 12
        1.    Administrative Expense Claims................................................. 12
        2.    Priority Employee Claims........................................................... 13
        3.    Professional Fee Claims.............................................................. 14
        4.    Priority Tax Claims..................................................................... 15
    B.    Classification and Treatment of Secured Claims (Class 1) ................. 15
    C.    Classification and Treatment of General Unsecured Claims (Class 2)................ 16
    D.    Classification and Treatment of Interests (Class 3) ............................ 16

VI. ACCEPTANCE OR REJECTION OF PLAN..................................................... 16

    A.    Holders of Administrative Expense Claims, Professional Fee Claims,
Priority Employee Claims and Priority Tax Claims ........................... 16
    B.    Class 1 Secured Claims........................................................................ 17
    C.    Class 2 General Unsecured Claims....................................................... 17
    D.    Class 3 Interests .................................................................................. 17

VII. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 17

    A.    Substantive Consolidation ................................................................... 17
    B.    The Liquidation Trust .......................................................................... 18
        1.    Formation and Name of the Liquidation Trust ......................... 18
        2.    Federal Income Tax Treatment of the Liquidation Trust........................ 18
        3.    Funding the Liquidation Trust ................................................... 18
        4.    Termination of Liquidation Trust .............................................. 19
        5.    Vesting and Transfer of Assets to the Liquidation Trust......................... 19
        6.    Appointment of the Liquidation Trustee.................................... 20
        7.    Powers and Authority of Liquidation Trustee ........................... 20
        8.    Retention and Compensation of Professionals ......................... 24
        9.    Compensation of Liquidation Trustee ....................................... 24
        10.    Resignation of Liquidation Trustee ........................................... 24
        11.    Removal of Liquidation Trustee ................................................ 24

| | | | |
|---|---|---|---|
| | 12. | Successor Liquidation Trustee | 25 |
| | 13. | Records | 25 |
| | 14. | Liability of the Liquidation Trustee | 25 |
| | 15. | Indemnification | 26 |
| C. | | The Source of Distributions | 26 |
| D. | | Provision for Treatment of Disputed Administrative Expense Claims and Disputed Claims | 27 |
| E. | | Abandonment of Property | 27 |
| F. | | Distribution of Property Under the Plan | 27 |
| | 1. | Manner of Cash Payments | 27 |
| | 2. | Setoff and Recoupment | 27 |
| | 3. | No *De Minimis* Distributions | 28 |
| | 4. | No Distributions With Respect to Disputed Claims | 28 |
| | 5. | Undeliverable or Unclaimed Distributions | 28 |

**VIII. LITIGATION** ... 29

| A. | Preservation of Causes of Action | 29 |
|---|---|---|

**IX. EXCULPATION AND INJUNCTION** ... 31

| A. | Term of Bankruptcy Injunction or Stay | 31 |
|---|---|---|
| B. | Exculpation for Estate Fiduciaries | 31 |
| C. | Injunction | 31 |
| D. | Preservation of Insurance | 32 |
| E. | Binding Effect | 33 |

**X. OTHER PLAN PROVISIONS** ... 33

| | | | |
|---|---|---|---|
| A. | | The Effective Date | 33 |
| B. | | Dissolution of the Board of Directors, Dismissal of Officers and Directors, and Termination of Creditors' Committee | 33 |
| C. | | Executory Contracts and Unexpired Leases | 35 |
| | 1. | Rejection of Executory Contracts and Unexpired Leases | 35 |
| | 2. | Bar Date for Rejection Damage Claims | 35 |
| D. | | Entry of a Final Decree | 35 |
| E. | | U.S. Trustee Fees and Quarterly Reports | 35 |
| F. | | Post-Effective Date Effect of Evidences of Claims | 35 |
| G. | | [Reserved] | 36 |
| H. | | Cancellation of Interests | 36 |
| I. | | Nondischarge of the Debtors' Debts | 36 |
| | 1. | Nondischarge of the Debtors | 36 |
| | 2. | Prohibition from Taking Certain Actions | 36 |
| J. | | No Recourse | 36 |
| K. | | No Admissions | 36 |
| L. | | Revocation of the Plan | 37 |
| M. | | Severability of Plan Provisions | 37 |
| N. | | Governing Law | 37 |
| O. | | Retention of Jurisdiction | 37 |
| P. | | Successors and Assigns | 39 |

-ii-

Q.    Saturday, Sunday, or Legal Holiday ....................................................... 39

XI. CONFIRMATION ........................................................................................... 39

A.    Plan Modification ................................................................................. 39
B.    Acceptance ............................................................................................ 39

XII. RECOMMENDATIONS AND CONCLUSION ............................................... 39

140999.01600/106069177v.1

Hampshire Group, Limited, Hampshire Brands, Inc., and Hampshire International, LLC, (collectively, the "Debtors") and the Official Committee of Unsecured Creditors of Hampshire Group Ltd., *et al.* (the "Committee") hereby jointly propose the following chapter 11 plan of liquidation for the Debtors (the "Plan")[1] pursuant to section 1121(a) of the Bankruptcy Code. The Debtors and the Committee are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement filed with respect to the Plan for a discussion of the Debtors' history, businesses, assets, Chapter 11 Cases, risk factors, summary and analysis of the Plan, and certain other related matters.

Subject to the provisions of section 1127 of the Bankruptcy Code and the restrictions on modification of the Plan set forth herein, the Debtors and the Committee reserve the right to amend, alter or modify the Plan one or more times before its substantial consummation.

---

[1] Capitalized terms not defined in this introductory section are as defined in Article I herein.

# I.
# DEFINITIONS

The following terms (which appear in the Plan as capitalized terms), when used in the Plan, have the meanings set forth below:

"**401(k) Plan**" means the Hampshire Group, LTD & Subsidiaries 401(k) Retirement Savings Plan.

"**401(k) Plan Termination Reserve**" means a Plan Reserve in an amount up to, but not to exceed, $30,000, established on the Effective Date (i) which shall be used only for payment of actual expenses of the Debtors or the Liquidation Trust necessary to complete the termination of the 401(k) Plan, but only to the extent such expenses cannot be charged to and paid from the assets of the 401(k) Plan, and (ii) to the extent any portion of the 401(k) Plan Termination Reserve shall not be necessary for or used to pay expenses in accordance with subparagraph (i) of this definition, such portion of the 401(k) Plan Termination Reserve shall be Distributable Cash. For the avoidance of doubt, no portion of the 401(k) Plan Termination Reserve shall be used to pay any Trust Expenses other than any actual expenses of the Debtors or the Liquidation Trust necessary to complete the termination of the 401(k) Plan. The 401(k) Plan Termination Reserve may be increased pursuant to court order, upon a motion on notice to Beneficiaries and the Post-Confirmation Service List, for good cause shown, including, without limitation, unanticipated services needed to complete termination of the 401(k) Plan.

"**Administrative Expense Claim**" means any claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estates or any actual and necessary expenses of operating the business of the Debtors, but use of such term in the Plan shall exclude Professional Fee Claims.

"**Allowed**" means a Claim, Administrative Expense Claim, Professional Fee Claim, or Interest or portion thereof (i) for which proof thereof was filed, as applicable, on or before the Claims Bar Date or the Governmental Unit Claims Bar Date, or within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3), and as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, shall have been interposed within the applicable limitations period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, (ii) for which no proof thereof was filed, to the extent that such Claim has been listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and as to which the Schedules have not been amended with respect to the listing of such Claim, (iii) which arises from the recovery of property under section 550 or section 553 of the Bankruptcy Code, (iv) which is allowed under the Plan, (v) which is allowed as set forth in any contract, instrument, or agreement entered into or assumed by the Debtors in connection with the Plan, or (vi) which is allowed by a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim", "Allowed Professional Fee

1

Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim, Professional Fee Claim, or Claim from and after the Petition Date. For the avoidance of doubt, to the extent that either the current Holder of a Claim or the original claimant is or becomes subject to an Avoidance Action, such Claim shall not be Allowed until such Avoidance Action has been finally resolved.

"**Allowed Class '\*\*' Claim**" means an Allowed Claim in the particular class described.

"**Assets**" means (i) all real or personal property of the Debtors (including as debtors in possession) of any nature, including, without limitation, any Cash, real property, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, works in process, accounts receivable, tax refunds, chattel paper, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action (including Avoidance Actions), and any other general intangibles of any nature whatsoever, including, without limitation, "property of the estate" pursuant to section 541 of the Bankruptcy Code; and (ii) proceeds, products, rents and profits of all of the foregoing.

"**Avoidance Action**" means any claim, Cause of Action, or right against any Person under any of the following: Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553; all fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in creditors rights to avoid, rescind, or recover on account of transfers, including but not limited to, claims relating to illegal dividends or distributions; all preference laws; the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction); the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction); and all similar federal and state laws and statutes.

"**Ballot**" means a ballot for accepting or rejecting the Plan.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases or any matter or proceeding within, or over any appeal of an order entered in the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

"**Beneficiaries**" means the beneficiaries of the Liquidation Trust, including Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Employee Claims, Allowed Priority Tax Claims and the Holders of Allowed Claims in Classes 1 and 2 entitled to receive distributions under the Plan.

"**Business Day**" means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)) or day on which banks are required or authorized by law to be closed in the City of Wilmington, Delaware.

2

**"Bond"** means one or more customs bonds that were issued by Hanover Insurance Company and/or its affiliates on behalf of the Debtors.

**"Cash"** means legal tender of the United States of America and Cash equivalents, including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means all claims, demands, rights, actions, causes of action and suits by or on behalf of the Debtors, their Estates, and/or the Liquidation Trust, whether pursuant to section 541 of the Bankruptcy Code or otherwise, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims for breach of contract or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) claims for fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress, or usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims for recoveries relating to the issuance of the Bond and the related letter of credit draw; (8) any other claims which may be asserted against third parties; and (9) any Insider Claims.

**"Chapter 11 Cases"** or **"Cases"** means the cases under chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware and bearing case numbers 16-12634 (BLS), 16-12635 (BLS), and 16-12636 (BLS).

**"Claim"** means a claim as that term is defined in Bankruptcy Code section 101(5) and includes Priority Employee Claims, Priority Tax Claims, Secured Claims, and General Unsecured Claims.

**"Claims Bar Date"** means March 6, 2017, at 5:00 p.m. (prevailing Eastern Time), the deadline set by the Court's Order entered on January 30, 2017, found at docket number 147, for filing proofs of Claim against the Estates that arose prior to the Petition Date (other than Claims of Governmental Units and Rejection Damage Claims, each as defined below).

**"Class"** means a group of Claims or Interests as classified in Article V of the Plan.

**"Confirmation"** means the entry of a Bankruptcy Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing held to consider Confirmation of the Plan.

**"Confirmation Order"** means the Bankruptcy Court order confirming the Plan under Bankruptcy Code section 1129.

3

**"Consummation"** means the occurrence of the Effective Date.

**"Creditor"** has the meaning ascribed to the term in section 101(10) of the Bankruptcy Code.

**"Creditors' Committee"** or **"Committee"** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the jointly-administered Chapter 11 Cases of Hampshire Group, Ltd., Hampshire Brands, Inc., and Hampshire International, LLC.

**"Debtors"** means, collectively, Hampshire Group, Ltd., Hampshire Brands, Inc., and Hampshire International, LLC.  The term "Debtors" includes the Debtors as debtors in possession.

**"Disallowed"** means (i) a Claim, an Administrative Expense Claim, a Professional Fee Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed, as applicable, on or before the Claims Bar Date or the Governmental Unit Claims Bar Date, or within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3), or which has not been deemed timely filed by the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law.

**"Disclosure Statement"** means the filed and operative Disclosure Statement relating to the Plan, as it may be amended, modified, or supplemented from time to time, including all exhibits thereto.

**"Disputed"** means a Claim, Administrative Expense Claim, Professional Fee Claim, or an Interest:

    (a)    as to which a Proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1), a motion or application for allowance or payment has been filed with the Bankruptcy Court, or a proof of Interest was filed or deemed filed under Bankruptcy Rule 3003(b)(2); and

    (b)    as to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Distributable Cash"** means the sum of (i) any Cash transferred to or received by the Liquidation Trust upon or promptly after the occurrence of the Effective Date that is in excess of $250,000, plus (ii) subject to the funding of the Quarterly Trust Expense Reserve Funding, not less than seventy percent (70%) of all other Cash received or possessed by the Liquidation Trust after the Effective Date.  For the avoidance of any doubt, "Distributable Cash" shall be available for and used only to fund Distributions in accordance with Article V of the Plan.

4

"**Distribution**" means any transfer of Cash or other property or instruments under the Plan to a Holder of an Allowed Claim, an Allowed Administrative Expense Claim, or an Allowed Professional Fee Claim.

"**Effective Date**" has the meaning set forth in Article X.A of the Plan.

"**Estates**" means the bankruptcy estates created in the Chapter 11 Cases under Bankruptcy Code section 541 and any other applicable law.

"**Final Order**" means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a)     that has not been reversed, rescinded, stayed, modified, or amended;

(b)     that is in full force and effect; and

(c)     with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

"**First Administrative Expense Claims Bar Date**" means June 15, 2017 at 5:00 p.m. (prevailing Eastern Time), the deadline set by the Court's Order entered on May 8, 2017, found at docket number 245, by which Persons must file a request seeking allowance of an Administrative Expense Claim (subject to certain exclusions) that arose between the Petition Date and April 30, 2017.

"**General Unsecured Claim**" means a Claim that is not a Priority Employee Claim, a Priority Tax Claim, or a Secured Claim.  For the avoidance of doubt, the term "General Unsecured Claim" excludes an Administrative Expense Claim, a Professional Fee Claim, or an Interest.

"**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"**Governmental Unit Claims Bar Date**" means May 22, 2017, at 5:00 p.m. (prevailing Eastern Time), the deadline set by the Bankruptcy Court's Order entered on January 30, 2017, found at docket number 147, for Governmental Units to file proofs of Claim against the Estates that arose prior to the Petition Date.

"**Holder**" means the holder of a Claim against the Debtors or the holder of an Interest in the Debtors.

"**Indemnified Party**" or "**Indemnified Parties**" has the meaning set forth in Article VII.B.15 of the Plan.

5

"**Insider**" means an insider of any Debtor as that term is defined in Bankruptcy Code section 101(31).

"**Insider Claims**" means any claim that may be asserted against an Insider by or on behalf of any or all of the Debtors, the Debtors' Estates, or the Liquidation Trust.

"**Interest**" means the interest, as that term is defined in Bankruptcy Code section 101(17), of any Person who holds an equity security in the Debtors no matter how held, including, but not limited to, issued and outstanding shares of common stock, preferred stock, stock options, warrants, membership interests, or other evidence of interests in securities of the Debtors.

"**Lien**" means any charge against or interest in property to secure payment or performance of a Claim, debt or obligation.

"**Liquidation Trustee**" means the Liquidation Trustee, or any successor Liquidation Trustee, who is appointed as trustee of the Liquidation Trust pursuant to the terms of the Plan. The Liquidation Trustee's specific responsibilities are set forth in Article VII.B of the Plan and in the Liquidation Trust Agreement annexed to the Disclosure Statement as Exhibit C.

"**Liquidation Trust**" means the Liquidation Trust described in Article VII of the Plan that will (i) succeed to all of the Assets and (ii) be responsible for paying Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims against the Debtors, in accordance with the terms of the Plan.

"**Liquidation Trust Agreement**" means the agreement annexed as Exhibit C to the Disclosure Statement establishing and delineating the terms and provisions of the Liquidation Trust.

"**Local Rules**" means the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware, as now in effect or hereafter amended and applicable to the Chapter 11 Cases.

"**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means November 23, 2016.

"**Plan**" means the *Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors of Hampshire Group, Ltd., et al.,* as it may be amended, modified, or supplemented from time to time by unanimous consent of the Plan Proponents or modified and/or confirmed by Final Order of the Bankruptcy Court.

"**Plan Proponents**" means the Debtors and the Creditors' Committee.

6

**"Plan Reserves"** means (a) the Post-Effective Date Trust Expense Reserve, (b) the 401(k) Plan Termination Reserve, and (c) any reserves established and funded by the Liquidation Trustee in accordance with the terms of Article V of the Plan for unpaid and/or Disputed (i) Administrative Expense Claims, (ii) Priority Employee Claims, (iii) Professional Fee Claims, (iv) Priority Tax Claims, and (v) General Unsecured Claims, provided that no reserve described in (c)(i) through (c)(v) of this definition shall be established or funded unless and until all necessary reserves for each (c)(i) through (c)(v) group or Class senior in payment have been established and fully funded in accordance with the terms of the Plan.

**"Post-Confirmation Service List"** means the (a) U.S. Trustee; (b) counsel for the Debtors; (c) Holders of unpaid Administrative Expense Claims, Professional Fee Claims, Priority Employee Claims, and Priority Tax Claims, until such time as any such claim either becomes Disallowed or such claim is paid in full or otherwise satisfied by agreement of the claimholder; (d) any other party in interest in the Chapter 11 Cases that specifically requests in writing that the Liquidation Trustee add such party's name to the list; and (e) with respect to a filed motion, all parties whose rights are known to be affected by such motion.

**"Post-Effective Date Trust Expense Reserve"** means a reserve funded from the Trust Assets in the amount of up to, but not to exceed, the sum of (i) the first $250,000 of Cash transferred to or received by the Liquidation Trust upon or promptly after the occurrence of the Effective Date, plus (ii) the Quarterly Trust Expense Reserve Funding, plus (iii) after the Effective Date, on a quarterly basis, commencing on December 1, 2017 and continuing with the quarters that commence on (w) February 1, 2018, (x) May 1, 2018, (y) August 1, 2018, and (z) December 1, 2018, Cash in an amount up to, but not to exceed, thirty percent (30%) of any Cash received by the Liquidation Trust; provided, however, that notwithstanding anything to the contrary contained in the Plan, not less than seventy percent (70%) of any Cash received or possessed by the Liquidation Trust other than the Cash described in subsections (i) and (ii) above shall be available for and used solely to fund Distributions in accordance with the terms of Article V of the Plan. The Post-Effective Date Trust Expense Reserve shall be established on the Effective Date (or as soon as reasonably practicable thereafter) to pay all Trust Expenses including, without limitation, professional fees of the Liquidation Trust, operating expenses of the Liquidation Trust, quarterly fees payable to the U.S. Trustee, and premiums to purchase a trustee bond or for insurance coverage, as necessary, after the Effective Date. On or prior to February 1, 2019, the Liquidation Trustee shall consult with the Holders of unpaid Professional Fee Claims, Priority Tax Claims, and/or General Unsecured Claims, as applicable, regarding the further funding of the Post-Effective Date Trust Expense Reserve. Any Beneficiary or other party in interest may file a motion on notice with the Bankruptcy Court seeking relief with respect to the Post-Effective Date Trust Expense Reserve. For the avoidance of doubt, any Cash remaining in the Post-Effective Date Trust Expense Reserve at the termination of the Liquidation Trust shall become Distributable Cash and shall be paid to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims (including, but not limited to, Allowed Priority Employee Claims and Allowed Priority Tax Claims), as applicable, in accordance with the terms of this Plan.

**"Postpetition"** means any time after the Petition Date.

7

**"Priority Employee Claims"** means a Claim against the Estates entitled to priority under Bankruptcy Code section 507(a)(4).

**"Priority Tax Claim"** means a Claim against the Estates entitled to priority under Bankruptcy Code section 507(a)(8).

**"Proof of Claim"** means a proof of Claim or Interest filed against any Debtor in the Chapter 11 Cases.

**"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, etc.) employed by the Debtors or the Creditors' Committee at the expense of the Estates pursuant to sections 327, 328, 363, 1103, or 1104 of the Bankruptcy Code, specifically (i) Blank Rome LLP, employed as counsel to the Debtors, (ii) Pachulski Stang Ziehl & Jones LLP, employed as counsel to the Creditors' Committee, and (iii) Gavin/Solmonese LLC, employed as financial advisor to the Creditors' Committee.

**"Professional Fee Claim"** means a claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or reimbursement for expenses incurred by any of the Professionals.

**"Quarterly Trust Expense Reserve Funding"** means after the Effective Date, on a quarterly basis, beginning with the quarter that commences on December 1, 2017 and continuing until the quarter that ends on February 28, 2019, Cash in an amount up to, but not to exceed, $125,000 to be used solely in accordance with the terms of the Post-Effective Date Trust Expense Reserve and in accordance with the terms of the Plan.

**"Rejection Damage Claim"** means a Claim for future rent, other obligations, or damages arising under an unexpired real property or personal property lease or executory contract that the Debtors have rejected pursuant to a Bankruptcy Court order, pursuant to the terms of the Bankruptcy Code, or pursuant to the terms of the Plan.

**"Rio"** means Rio Garment S.A. and its current and former parents, subsidiaries, affiliates, employees, officers, directors, managers, agents, representatives, trustees and estates.

**"Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs of each of the Debtors filed pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto.

**"Second Administrative Expense Claims Bar Date"** means the date that is thirty (30) calendar days after the Effective Date, or the first business day thereafter, and by which any

8

Person requesting (i) allowance of an Administrative Expense Claim arising between May 1, 2017 and the Effective Date, or (ii) allowance of any other administrative expense pursuant to section 503 of the Bankruptcy Code (other than a Professional Fee Claim or an administrative expense that is subject to the First Administrative Expense Claims Bar Date) must file a request for allowance of such claim; provided, that such Second Administrative Expense Claims Bar Date shall not apply to (y) any fees payable either to the U.S. Trustee or the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930, or (z) any claim by a Governmental Unit for a tax or penalty described in Bankruptcy Code sections 503(b)(1)(B) and 503(b)(1)(C), as provided for in Bankruptcy Code section 503(b)(1)(D).

**"Secured Claim"** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

**"Solicitation Procedures Order"** means an order of the Bankruptcy Court that, among other things, (i) approves certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, and (ii) approves on an interim basis the adequacy of the Disclosure Statement.

**"Trust Assets"** means all Assets vested in the Liquidation Trust pursuant to Article VII of the Plan, including without limitation all Assets.

**"Trust Expenses"** means the expenses incurred by the Liquidation Trust following the Effective Date (including the fees and costs of attorneys and other professionals) for the purpose of, without limitation, (i) prosecuting or otherwise attempting to collect or realize upon the Causes of Action; (ii) selling or collecting upon any of the Trust Assets; (iii) resolving Disputed Claims, Disputed Administrative Expense Claims, and Disputed Professional Fee Claims and effectuating Distributions in accordance with the terms of the Plan; and (iv) implementing the Plan and closing the Chapter 11 Cases, including, but not limited to payment of post-Effective Date taxes, quarterly fees payable to the U.S. Trustee, and wind-down expenses (such as document storage). Trust Expenses shall also include compensation and reimbursement of reasonable expenses of independent contractors, employees and professionals employed by the Liquidation Trust or otherwise incurred in the administration of the Liquidation Trust.

**"U.S. Trustee"** means the Office of the United States Trustee for Region 3.

## II.
## RULES OF INTERPRETATION

1.　　The rules of construction in Bankruptcy Code section 102 apply to the Plan to the extent not inconsistent with any other provision in this Article II.

2.　　Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) and Local Rules 9006-1 and 9006-2 apply when computing any time period under the Plan.

9

3.    A term used in the Plan and not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, as applicable.

4.    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement or the Liquidation Trust Agreement.

5.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to such form or terms may be made after the Confirmation Date without the consent of any party materially affected.

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.    Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to the Plan in its entirety rather than to only a particular article, section, or paragraph of the Plan.

9.    Unless otherwise specified, all references to articles, sections, clauses or exhibits are references to the Plan's articles, sections, clauses or exhibits.

10.    Section captions and headings are used only as convenient references and do not affect the meaning of the Plan.

## III.
## PLAN OBJECTIVES

The Plan contemplates the substantive consolidation of the Debtors' Estates into a single Estate for all purposes associated with Confirmation and Consummation.  The Plan further provides for the establishment on the Effective Date of the Liquidation Trust for the primary purpose of administering and liquidating the Trust Assets and for the secondary purposes of, *inter alia*, (a) analyzing and pursuing Causes of Action, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan.  The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust.  On the Effective Date, all of the Estates' Assets, which are principally Cash, Accounts Receivable, any recoveries related to the issuance of the Bond and the related letter of credit draw, and the Causes of Action, shall vest in the Liquidation Trust.  The Plan contemplates monetization of these Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan in satisfaction of the Debtors' obligations hereunder.

10

## IV.
## METHOD OF CLASSIFICATION OF CLAIMS
## AND INTERESTS; GENERAL PROVISIONS

### A.    General Rules of Classification

The Plan divides Holders of Administrative Expense Claims, Professional Fee Claims, Claims, and Interests into different groups and Classes based on their legal rights and interests, and provides for the satisfaction from the Trust Assets of Administrative Expense Claims, Professional Fee Claims, and Claims.  Article V describes the categories of Administrative Expense Claims, Professional Fee Claims, Priority Employee Claims, and Priority Tax Claims, all of which are not classified.  Article V also classifies Claims and Interests, for all purposes, including voting, confirmation, and distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest falls within the Class description.  To the extent part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Pursuant to Article VII.A, the Plan provides for the substantive consolidation of the Estates into a single Estate for all purposes associated with Confirmation and Consummation. As a result of the substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors, and all Claims filed against more than one Debtor either on account of joint and several liability or on account of the same debt shall be deemed a single Claim against the consolidated Estates.

### B.    Holders of Claims Entitled to Vote

Each Holder of an Allowed Class 2 General Unsecured Claim, and each Holder of a Class 2 General Unsecured Claim that has been temporarily allowed for voting purposes by order under Bankruptcy Rule 3018(a), shall be entitled to vote separately to accept or reject the Plan as provided by the Solicitation Procedures Order.  Any Unimpaired Class of Claims shall be deemed to have accepted the Plan.

### C.    Administrative Expense Claims, Professional Fee Claims,
### Priority Employee Claims, and Priority Tax Claims

Administrative Expense Claims, Professional Fee Claims, Priority Employee Claims, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article V of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.

11

## V.
## TREATMENT OF CLAIMS AND INTERESTS

The following table summarizes the classification and treatment of the Classes of Claims and Interests under the Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| Class 1 | Secured Claims | Unimpaired | Deemed to Accept |
| Class 2 | General Unsecured Claims | Impaired | Voting |
| Class 3 | Interests | Impaired | Deemed to Reject |

The treatment in the Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim or an Allowed Interest may have in or against the Debtors or their property. This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtors or their property. All Distributions under the Plan will be tendered to the entity holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY ADMINISTRATIVE EXPENSE CLAIM, PROFESSIONAL FEE CLAIM, OR CLAIM THAT IS NOT ALLOWED.**

### A.  Allowance and Treatment of Administrative Expense Claims, Priority Employee Claims, Professional Fee Claims, and Priority Tax Claims

#### 1.  Administrative Expense Claims

An Administrative Expense Claim (other than any fees payable either to the U.S. Trustee or the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930, or any claim by a Governmental Unit for a tax or penalty described in Bankruptcy Code sections 503(b)(1)(B) and 503(b)(1)(C), as provided for in Bankruptcy Code section 503(b)(1)(D)) must be filed with the Bankruptcy Court so as to be received on or before the First Administrative Expense Claims Bar Date or the Second Administrative Expense Claims Bar Date, as applicable, or such other date as may be agreed to by the Liquidation Trustee, or as otherwise may be directed by a Final Order of the Bankruptcy Court upon a motion filed by the affected claimant pursuant to Bankruptcy Rule 9006(b)(1) seeking allowance of a late-filed Administrative Expense Claim based upon excusable neglect (an "Excusable Neglect Order"). Timely filed Administrative Expense Claims shall be treated as follows:

Within 90 days after the Effective Date, the Liquidation Trustee will allow, settle, or object to all timely filed Administrative Expense Claims. Any defense, setoff, offset, or deduction to any timely filed Administrative Expense Claim shall be raised or asserted in connection with any objection filed with respect to such Administrative Expense Claim in accordance with this Article V.A.1. The 90-day deadline described in this paragraph may be

12

expanded pursuant to order of the Bankruptcy Court for good cause shown or by consent of the claimant and the Liquidation Trustee.

On or as soon as practicable after the Effective Date, after the Liquidation Trustee has funded (i) the initial $250,000 of the Post-Effective Date Trust Expense Reserve and (ii) the 401(k) Plan Termination Reserve, the Liquidation Trustee will distribute, on a Pro Rata basis, the Distributable Cash by (a) making Pro Rata Distributions of Cash to each Holder of an Allowed Administrative Expense Claim and (b) funding a Plan Reserve in Cash for all Disputed Administrative Expense Claims the aggregate amount of which equals the sum of (y) the Pro Rata Distribution calculated based upon the undisputed amount, if any, of each Disputed Administrative Expense Claim, after taking into account any claims, rights, or defenses of the Debtors, their Estates, or the Liquidation Trust, and (z) the Liquidation Trustee's good faith estimate of a sufficient amount to satisfy the disputed amount of each Disputed Administrative Expense Claim.  On not less than a quarterly basis, the Liquidation Trustee shall distribute the Distributable Cash (if any) in accordance with the preceding sentence until such time as (i) all Allowed Administrative Expense Claims have been paid in full in Cash, or as otherwise agreed to by the Holder of an Administrative Expense Claim and the Liquidation Trustee, or (ii) the Trust Assets have been exhausted.

For the avoidance of doubt, on or as soon as practicable after the Effective Date, the Liquidation Trustee shall, in the reasonable exercise of his or her business judgment, fund a Plan Reserve for Administrative Expense Claims in accordance with the terms of the Plan and, after such Plan Reserve for Administrative Expense Claims has been funded, make Distributions to Holders of Allowed Priority Employee Claims, in accordance with the terms of Article V.A.2 of the Plan, and make Distributions and/or fund Plan Reserves for Professional Fee Claims in accordance with the terms of Article V.A.3 of the Plan.

The Liquidation Trustee will use reasonable best efforts to, on or prior to December 31, 2017, (i) resolve all Disputed Administrative Expense Claims and (ii) make all Distributions to Holders of Allowed Administrative Expense Claims.

Any Holder of an Administrative Expense Claim that does not timely assert such Administrative Expense Claim in accordance with this Article V.A.1, or in accordance with an Excusable Neglect Order, shall have its Administrative Expense Claim be deemed Disallowed under the Plan and be forever barred from asserting such Administrative Expense Claim against the Debtors, their Estates, the Liquidation Trust, or any of their Assets or property.

## 2.    Priority Employee Claims

Certain Priority Employee Claims for employee benefits, such as unpaid severance and unused vacation time, are listed on the Schedules.  The Debtors are in the process of reconciling such Priority Employee Claims and reserve the right to amend the Schedules and/or to mark any claim as having been partially or fully satisfied, waived and/or extinguished, as applicable. Priority Employee Claims shall be treated as follows:

On or as soon as practicable after the Effective Date, after the Liquidation Trustee has paid, resolved, or reserved for, as applicable, all Administrative Expense Claims in accordance

13

with Article V.A.1 of the Plan, the Liquidation Trustee shall pay the Allowed amount of each Allowed Priority Employee Claim in accordance with the terms of the Plan and other orders of the Bankruptcy Court.

Nothing herein shall be deemed to prohibit the Plan Proponents and/or the Liquidation Trustee from investigating, objecting to the allowance of, and/or amending the Schedules with respect to any Priority Employee Claim. Nothing herein shall be construed as authorizing payment on account of any Priority Employee Claim in excess of the amount authorized for such claims under the Bankruptcy Code. The amount of any Allowed Priority Employee Claim in excess of the caps established for such claims under the Bankruptcy Code shall be treated as a General Unsecured Claim.

### 3. Professional Fee Claims

Each Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must file and serve a properly noticed final fee application by no later than forty-five (45) days after the Effective Date. Any objection, defense, setoff, offset, or deduction to any such request for compensation or reimbursement of expenses must be raised in connection with the hearing on such final fee application. The Professional shall have an Allowed Professional Fee Claim in the amount of all compensation and reimbursement of expenses allowed pursuant to a Bankruptcy Court order granting such final fee application. Each Holder of an Allowed Professional Fee Claim shall be entitled to receive payment on account of its Allowed Professional Fee Claim as set forth in this Article V.A.3.

After the Liquidation Trustee has paid, resolved, or reserved for, as applicable, all Priority Employee Claims in accordance with Article V.A.2 of the Plan, the Liquidation Trustee will distribute, on a Pro Rata basis, the Distributable Cash by (a) making Pro Rata Distributions of Cash to each Holder of an Allowed Professional Fee Claim and (b) funding a Plan Reserve in Cash for all Disputed Professional Fee Claims the aggregate amount of which equals the sum of (y) the Pro Rata Distribution calculated based upon the undisputed amount, if any, of each such Disputed Professional Fee Claim after taking into account any claims, rights, or defenses of the Debtors, their Estates, or the Liquidation Trust, and (z) the Liquidation Trustee's good faith estimate of a sufficient amount to satisfy the disputed amount of each Disputed Professional Fee Claim. On not less than a quarterly basis, the Liquidation Trustee shall distribute the Distributable Cash (if any) in accordance with the preceding sentence until such time as (i) all Allowed Professional Fee Claims have been paid in full in Cash, or as otherwise agreed to by the Holder of a Professional Fee Claim and the Liquidation Trustee, or (ii) the Trust Assets have been exhausted.

All Holders of Professional Fee Claims consent to the treatment of their Allowed Professional Fee Claims and to the timing of payments on such Allowed Professional Fee Claims as set forth herein.

14

### 4.    Priority Tax Claims

A Priority Tax Claim must either (i) be listed on the Schedules or (ii) be filed with the Bankruptcy Court so as to be received on or before the Governmental Unit Claims Bar Date, or such other date as may be established by the Bankruptcy Court or agreed to by the Liquidation Trustee. Any Holder of a Priority Tax Claim for which a Claim was neither scheduled nor a Proof of Claim timely filed shall have a Disallowed Claim.

After the Liquidation Trustee has paid, resolved, or reserved for, as applicable, all Professional Fee Claims in accordance with Article V.A.3 of the Plan, the Liquidation Trustee will distribute, on a Pro Rata basis, the Distributable Cash by (a) making regular installment payments of Cash, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, to each Holder of an Allowed Priority Tax Claim and (b) funding a Plan Reserve in Cash for all Disputed Priority Tax Claims the aggregate amount of which equals the sum of (y) the Pro Rata Distribution calculated based upon the undisputed amount, if any, of each such Disputed Priority Tax Claim after taking into account any claims, rights, or defenses of the Debtors, their Estates, or the Liquidation Trust, and (z) the Liquidation Trustee's good faith estimate of a sufficient amount to satisfy the disputed amount of each Disputed Priority Tax Claim. The Liquidation Trustee, in his or her discretion, will make additional regular installment payments of Cash to Holders of Allowed Priority Tax Claims until such time as (i) all Allowed Priority Tax Claims have been paid in full in Cash, or as otherwise agreed to by any Holder thereof and the Liquidation Trustee, or (ii) the Trust Assets have been exhausted.

### B.    Classification and Treatment of Secured Claims (Class 1)

**Classification:** Class 1 consists of all Secured Claims.

**Treatment:** On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 1 Claim will receive, at the election of the Liquidation Trustee, one of the following treatments in full satisfaction of its Allowed Class 1 Claim:

(a)    The Liquidation Trustee will convey to the Holder of the Allowed Class 1 Claim the collateral in which such Holder has a security interest;

(b)    The Liquidation Trustee will pay to the Holder of the Allowed Class 1 Claim, up to the amount of such Allowed Class 1 Claim, any net proceeds actually received from the sale or disposition of the collateral in which such Holder has a security interest;

(c)    Provided there is Distributable Cash on hand, the Liquidation Trustee will pay Cash to the Holder of the Allowed Class 1 Claim in the amount of such Allowed Class 1 Claim;

(d)    Such other distributions or treatment that are necessary to leave the rights of the Holder of the Allowed Class 1 Claim unimpaired or that are necessary to otherwise satisfy the requirements of Chapter 11 of the Bankruptcy Code; or

(e)    Such other and less favorable distributions or treatments as may be agreed upon by and between the Holder of the Allowed Class 1 Claim and the Liquidation Trustee.

15

The Liquidation Trustee may, in his or her discretion, select which of these treatments each Holder of an Allowed Class 1 Claim will receive. The Liquidation Trustee shall have until the later of (a) the Effective Date and (b) ninety (90) days after a Class 1 Claim has become an Allowed Class 1 Claim to elect which treatment to provide to such Holder of an Allowed Class 1 Claim.

### C.    Classification and Treatment of General Unsecured Claims (Class 2)

**Classification:**  Class 2 consists of all General Unsecured Claims.

**Treatment:**    After the Liquidation Trustee has paid, resolved, or reserved for, as applicable, all Administrative Expense Claims, Priority Employee Claims, Professional Fee Claims, Priority Tax Claims, and Secured Claims, each in accordance with Article V.A or Article V.B of the Plan, as applicable, the Liquidation Trustee will distribute, on a Pro Rata basis, the Distributable Cash by (a) commencing making Pro Rata Distributions of Cash to each Holder of an Allowed General Unsecured Claim, and (b) funding a Plan Reserve for all Disputed General Unsecured Claims the aggregate amount of which equals the sum of (y) the undisputed amount, if any, of each Disputed General Unsecured Claim after taking into account any claims, rights, or defenses of the Debtors, their Estates, or the Liquidation Trust, and (z) the Liquidation Trustee's good faith estimate of a sufficient amount to satisfy the disputed amount of each Disputed General Unsecured Claim.    Thereafter, in accordance with the preceding sentence, the Liquidation Trustee, in his or her discretion, will make further periodic Pro Rata Distributions and/or fund a Plan Reserve for all Disputed General Unsecured Claims until such time as (i) all Allowed General Unsecured Claims have been paid in full in Cash, or as otherwise agreed to by the Holder of a General Unsecured Claim and the Liquidation Trustee, or (ii) the Trust Assets have been exhausted.

### D.    Classification and Treatment of Interests (Class 3)

**Classification:**  Class 3 consists of all Interests in the Debtors.

**Treatment:**  On the Effective Date, all Interests in the Debtors shall be cancelled, and the Holders of Class 3 Interests shall not be entitled to, and shall not receive or retain, any property on account of such Interests under the Plan.

**VI.**
**ACCEPTANCE OR REJECTION OF PLAN**

### A.    Holders of Administrative Expense Claims, Professional Fee Claims, Priority Employee Claims and Priority Tax Claims

Holders of Administrative Expense Claims, Professional Fee Claims, Priority Employee Claims and Priority Tax Claims who do not object to confirmation of the Plan shall be deemed to have consented to treatment, as set forth in the Plan, that is or may be different from that set forth in 11 U.S.C. § 1129(a)(9).

16

**B.**     **Class 1 Secured Claims**

Class 1 is an unimpaired Class.  Holders of Class 1 Secured Claims are deemed to accept the Plan and are not entitled to vote.

**C.**     **Class 2 General Unsecured Claims**

Each Holder of a Class 2 General Unsecured Claim that is not a Disallowed Claim and is not subject to a pending claim objection as of the deadline to submit Ballots shall be entitled to vote to accept or reject the Plan.  Class 2 shall have accepted the Plan if the Plan is accepted by creditors, other than any entity designated under section 1126(e) of the Bankruptcy Code, that hold at least two-thirds (2/3) in amount and more than one-half in number of the Allowed Claims in Class 2 held by creditors, other than an entity designated under section 1126(e) of the Bankruptcy Code, that have accepted or rejected the Plan.

**D.**     **Class 3 Interests**

Holders of Class 3 Interests are deemed to reject the Plan and are not entitled to vote.


**VII.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.**     **Substantive Consolidation**

The Plan Proponents seek entry, pursuant to section 105 of the Bankruptcy Code, of a Bankruptcy Court order that, effective upon the Effective Date, substantively consolidates the Debtors' Estates into a single consolidated Estate and consolidates all of the debts of all of the Debtors, for all purposes associated with Confirmation and Consummation.  *See* Disclosure Statement at Section VIII.B.1.

On and after the Effective Date, all Assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of Hampshire Group, Ltd. for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors, subject to all rights, claims, defenses, and arguments available to the Debtors or the Liquidation Trust.

Substantive consolidation will not (i) alter the state of incorporation or state of formation of any Debtor for purposes of determining the applicable law for any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Liquidation Trustee to prosecute any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

Notwithstanding anything in the Plan or in the Confirmation Order to the contrary, the entry of the Confirmation Order ordering substantive consolidation of the Estates shall not have any effect upon the separate and distinct legal entities as they existed at the time of any prepetition transaction that is the subject of any litigation; *provided, however,* that the foregoing

17

provision shall not serve to prejudice or compromise whatever rights, if any, the Debtors or the Liquidation Trustee, as applicable, may have to contend in any pending or future adversary proceeding or other lawsuit that the Debtors or the Liquidation Trustee, as applicable, may prosecute claims for fraudulent conveyance or fraudulent transfer arising from transfers made by one or more of the Debtors based on any theory or doctrine, including any federal, state, or common law alter-ego, veil-piercing, or any other theory or doctrine that would permit or require the disregard of corporate separateness or facts as they existed at the time of the transaction in question. Moreover, substantive consolidation shall not affect the obligation of each Debtor or the Liquidation Trustee to pay quarterly fees to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930 until the earlier of the time that a particular Case has been closed, dismissed, or converted.

Notwithstanding anything to the contrary herein, on the Effective Date, all Claims by a Debtor against any other Debtor will be extinguished without any distributions being made on account of such Claims.

### B.  The Liquidation Trust

#### 1.  Formation and Name of the Liquidation Trust

On the Effective Date, the Liquidation Trust, pursuant to and in accordance with the Liquidation Trust Agreement attached to the Disclosure Statement as <u>Exhibit C</u>, shall be established for the primary purpose of administering and liquidating the Trust Assets and for the secondary purposes of, *inter alia*, (a) analyzing and pursuing Causes of Action, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan. From and after the Effective Date, the Liquidation Trust shall be called the "Hampshire Liquidation Trust" for all purposes.

#### 2.  Federal Income Tax Treatment of the Liquidation Trust

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a "grantor trust" for federal income tax purposes, pursuant to sections 671-677 of the Internal Revenue Code of 1986, as amended, and that the Liquidation Trust be owned by the Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the Trust Assets and then contributed such interest to the Liquidation Trust.

#### 3.  Funding the Liquidation Trust

On the Effective Date, all of the Assets of the substantively consolidated Estate, as well as the rights and powers of the Debtors, the consolidated Estate and the Creditors' Committee, shall automatically vest in the Liquidation Trust. Specifically, and without limitation, the Liquidation Trust, through the Liquidation Trustee, shall have the right to prosecute all Causes of Action, receive all accounts receivable and the proceeds related thereto, and receive all recoveries related to the issuance of the Bond and the related letter of credit draw.

As soon as practicable after the Effective Date, but in no event later than ninety (90) days thereafter, (i) the Liquidation Trustee shall determine the fair market value of the Liquidation Trust Assets as of the Effective Date, based on a good faith determination, and (ii) the

18

Liquidation Trustee shall establish appropriate means to apprise the Beneficiaries of such valuation. The valuation shall be used consistently by all parties, including, without limitation, the Debtors, the Liquidation Trust, and the Beneficiaries, for all federal income tax purposes.

### 4.    Termination of Liquidation Trust

The duties, responsibilities and powers of the Liquidation Trustee shall terminate in accordance with the terms of the Plan and the Liquidation Trust Agreement after (a) all the Trust Assets have been fully administered, (b) all reasonably possible Distributions have been made in accordance with the terms of the Plan have been made, and (c) all Disputed Claims have been resolved.

Upon the termination of the Liquidation Trust, the Liquidation Trustee shall file with the Bankruptcy Court, on notice to Beneficiaries and the Post-Confirmation Service List, a report thereof, seeking an order discharging the Liquidation Trustee and a final decree closing any open Chapter 11 Cases. The Liquidation Trustee shall not unduly prolong the duration of the Liquidation Trust. As efficiently and expeditiously as possible, the Liquidation Trustee shall endeavor to resolve, settle or otherwise dispose of all Trust Assets, effect the distribution of the Trust Assets in accordance with the terms of the Plan, and terminate the Liquidation Trust as soon as practicable.

### 5.    Vesting and Transfer of Assets to the Liquidation Trust

Pursuant to Bankruptcy Code section 1141(b), the Assets of the Estates shall vest in the Liquidation Trust; provided, however, that the Liquidation Trustee may abandon or otherwise not accept any Assets that the Liquidation Trustee believes, in good faith, have no meaningful value to the Liquidation Trust. Any Assets the Liquidation Trustee so abandons or otherwise does not accept shall not vest in the Liquidation Trust and shall revest in the Debtors; provided, however, that pursuant to an order of the Bankruptcy Court following the provision of reasonable notice to Beneficiaries by filing a notice in accordance with Bankruptcy Rule 6007(a) on the Court's docket for these Chapter 11 Cases, the Liquidation Trustee may abandon any Assets to any Person.

On the Effective Date, the Liquidation Trustee shall (i) take possession, custody, and control of all books, records, and files of the Debtors and their Estates; and (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required. Nothing herein shall be construed to deem the Liquidation Trustee to have possession, custody or control of the books, records, and files of the Debtors and their Estates not actually in the possession, custody or control of the Liquidation Trustee on the Effective Date.

As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan, shall be free and clear of all Claims, Liens, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. The Liquidation Trustee shall make distributions in accordance with the Plan and the Liquidation Trust Agreement.

19

Nothing herein shall be construed to limit or expand the terms of section 522(c) of the Bankruptcy Code.

### 6. Appointment of the Liquidation Trustee

The Liquidation Trustee shall be selected by the Committee in consultation with the Debtors. The Committee, in consultation with the Debtors, and subject to entry of the Confirmation Order and the occurrence of the Effective Date, has selected Richard S. Lauter, Esq., a partner in the law firm of Lewis Brisbois Bisgaard & Smith LLP, to be the Liquidation Trustee. During the Chapter 11 Cases, Lewis Brisbois Bisgaard & Smith LLP has served as counsel to I-MAR LLC, one of the members of the Committee. Notwithstanding such prior representation, the Liquidation Trustee shall function as an independent, disinterested fiduciary for the Estates and creditors. The Debtors and Committee believe that Mr. Lauter is qualified to serve as Liquidation Trustee. The Liquidation Trustee may obtain a bond in an amount equal to the reasonable value of the Trust Assets as agreed upon by the Liquidation Trustee in consultation with the U.S. Trustee.

### 7. Powers and Authority of Liquidation Trustee

The Liquidation Trustee shall be the exclusive trustee of the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Liquidation Trustee shall serve as the representative of the Estates in accordance with the provisions of the Bankruptcy Code. The powers and authority of the Liquidation Trustee shall include, without limitation other than as provided in the Plan or the Liquidation Trust Agreement, the power to:

(i) invest (to the extent permissible under current Internal Revenue Service guidelines) or withdraw funds of the Liquidation Trust, make distributions, incur obligations for reasonable and necessary expenses in liquidating and converting any remaining Assets to Cash, and pay taxes and other obligations owed by the Liquidation Trust or the Debtors from funds held by the Liquidation Trustee in accordance with the Plan;

(ii) perform all of the obligations and agreements of the Liquidation Trust and/or of the Liquidation Trustee provided for in the Plan and in the Liquidation Trust Agreement;

(iii) hold legal title to all rights of the Debtors and their Estates in or arising from the Trust Assets, including without limitation, the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein;

(iv) protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(v) perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, investigating, commencing, prosecuting or settling Causes of Action (including, without limitation, Avoidance Actions), enforcing contracts, and asserting claims, defenses, offsets and privileges;

20

(vi) determine, satisfy, object to, compromise or estimate on reasonable terms all claims or liabilities created, incurred, or assumed by the Liquidation Trust;

(vii) determine on reasonable terms the amount and timing of regular installment payments to Holders of Allowed Priority Tax Claims, consistent with section 1129(a)(9)(C) of the Bankruptcy Code and in accordance with the terms of the Plan;

(viii) pay all expenses and make all other payments relating to the Liquidation Trust;

(ix) establish, keep, and maintain the Post-Effective Date Trust Expense Reserve and the 401(k) Plan Termination Reserve, each in accordance with the terms of the Plan;

(x) establish, keep, and maintain Plan Reserves for the benefit of the Holders of Disputed Claims;

(xi) account separately for Plan Reserves in accordance with the terms of the Plan;

(xii) except as otherwise provided in the Plan, in the discretion of the Liquidation Trustee, setoff against any Claim (and the payments or other distributions to be made pursuant to the Plan with respect to such Claims) any Cause of Action against the Holder of such Claim, but neither the failure to so setoff any Cause of Action nor the allowance of any Claim shall constitute a waiver or release by the Liquidation Trust or Liquidation Trustee of any Cause of Action;

(xiii) market, negotiate, enter into, execute and perform on reasonable terms agreements for the sale or other disposition of the Trust Assets;

(xiv) prepare and deliver written statements or notices, quarterly or otherwise, required by law to be delivered to Beneficiaries;

(xv) prepare and file post-confirmation quarterly disbursement and status reports, with copies of such reports served on the Post-Confirmation Service List, and pay all quarterly fees to the U.S. Trustee which are required by applicable law;

(xvi) prepare, or have prepared, and file with the appropriate taxing authority all tax and information returns with respect to the Debtors and the Liquidation Trust (including, without limitation, United States federal, state, local, or foreign tax or information returns required to be filed by the Debtors and the Liquidation Trust) and pay taxes properly payable by the Debtors and the Liquidation Trust, if any, and cause all taxes payable by the Debtors and the Liquidation Trust, if any, to be paid exclusively out of the Trust Assets; provided, however, that, subject to section 503(b)(1)(D) of the Bankruptcy Code, nothing herein shall obligate the Liquidation Trustee to pay or make any Distribution on account of any tax that is not Allowed in these Chapter 11 Cases;

(xvii) maintain and preserve the originals of all instruments and documents pertaining to the Trust Assets to the extent such instruments and documents are in the possession or control of the Liquidation Trustee upon or after the Effective Date;

(xviii) take any of the foregoing actions, and execute any documents relating thereto, in the Liquidation Trustee's own name, on behalf of the Debtors or the Liquidation Trust (including but not limited to all settlement agreements);

(xix) exercise and perform the rights, powers and duties held by the Debtors or the Estates, including without limitation the authority under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estates, including but not limited to the commencement, prosecution and settlement of the Causes of Action and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code;

(xx) exercise all rights, privileges, power and authority that may be exercised by any officer, director, shareholder, or other party acting in the name of any Debtor or the Estates with like effect as if duly authorized, exercised and taken by action of such officers, directors, shareholders, or other party;

(xxi) administer, terminate and/or wind down any plan sponsored or administered by a Debtor prepetition for employee benefits, retirement benefits, or otherwise governed by the Employee Retirement Income Security Act of 1974 (as amended) and, in connection therewith, make any filings or reports as may be appropriate or required by federal, state or local law or regulations;

(xxii) engage independent contractors, employees, and professionals on reasonable terms to assist the Liquidation Trustee with respect to his or her responsibilities, including, but not limited to, any independent contractor, employee, or professionals formerly employed by the Debtors or the Creditors' Committee;

(xxiii) prosecute, compromise and/or settle on reasonable terms claims and Causes of Action and objections to Claims, including, without limitation, asserting counterclaims, setoff, or recoupment against Claims, on behalf of Debtors, their Estates, and/or the Liquidation Trust;

(xxiv) liquidate on reasonable terms any remaining Trust Assets and provide for the distributions therefrom in accordance with the provisions of the Plan with the full rights and powers of the Debtors and their Estates;

(xxv) manage the continued liquidation of the Trust Assets, and to otherwise administer the Liquidation Trust;

(xxvi) stand in the shoes of the Debtors and assert or waive attorney client privilege and other privileges between each and any of the Debtors and their professionals (whether such professionals represented any of the Debtors prior to, or after, the Petition Date) with respect to any matter affecting Trust Assets, all as permitted by and consistent with applicable law;

22

(xxvii) interpret the Plan in the Liquidation Trustee's reasonable discretion;

(xxviii) amend the Schedules in accordance with Bankruptcy Rule 1009; and

(xxix) exercise such other powers and authority as may be vested in the Liquidation Trustee by the Plan or any Final Order, or as may be necessary and proper to carry out the provisions of the Plan; provided, however, that such other powers and authority are not inconsistent with the Plan or applicable law.

The Liquidation Trustee, on behalf of the Liquidation Trust, shall have discretion to pursue, not pursue and/or settle all Causes of Action and objections to Claims or Administrative Expense Claims on reasonable terms as the Liquidation Trustee determines is in the best interests of the Liquidation Trust, and the Liquidation Trustee shall not have any liability whatsoever for the outcome of that decision, except upon entry of a Final Order determining that the Liquidation Trustee committed gross negligence, fraud, or intentional misconduct. Any settlement of either a Cause of Action or an objection to a Claim or an Administrative Expense Claim shall be subject to prior approval of the Bankruptcy Court; provided, that the Liquidation Trustee shall not be required to obtain prior Bankruptcy Court approval of (i) a settlement of any Cause of Action if the amount sought to be recovered by the Liquidation Trustee in the complaint or other initiating document is less than $50,000, (ii) the allowance of any Disputed General Unsecured Claim filed or scheduled in an amount less than $50,000, or (iii) the allowance of any Disputed Administrative Expense Claim, Priority Employee Claim, Priority Tax Claim, or Secured Claim filed or scheduled in an amount less than $10,000. The Liquidation Trustee shall provide at least fourteen (14) days notice of any such proposed settlement to the Post-Confirmation Service List and to any known party whose rights may be affected by such proposed settlement. If no timely objection is interposed, such settlement shall be authorized and approved for all purposes and the Liquidation Trustee shall be authorized to submit a proposed form of order to the Bankruptcy Court approving such settlement. If a timely objection is interposed, the Liquidation Trustee shall request a hearing before the Bankruptcy Court, which hearing shall be scheduled for no earlier than seven (7) days after the objection deadline. Nothing contained in this paragraph shall be deemed to limit the Liquidation Trustee's right to file a motion pursuant to Local Rule 9006-1(e) seeking to shorten notice of any hearing date and/or objection deadline.

In connection with the administration of the Liquidation Trust, the Liquidation Trustee is authorized to perform all acts necessary and desirable to accomplish the purposes of the Plan. If the Liquidation Trustee cannot take any action, including without limitation the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Liquidation Trustee may appoint an independent Person to take such action in the Liquidation Trustee's place and stead, including without limitation the retention of professionals, which may include professionals retained by the Liquidation Trustee.

The Liquidation Trustee shall respond, within a reasonable period of time, to all reasonable requests for information received from any Holder of a Claim, Administrative Expense Claim, or Professional Fee Claim.

23

### 8.    Retention and Compensation of Professionals

The Liquidation Trustee may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist in fulfilling the Liquidation Trustee's obligations under the Plan, and on whatever reasonable terms the Liquidation Trustee deems appropriate, including, without limitation, contingency fee arrangements. The Liquidation Trustee may employ professionals that were previously employed by the Creditors' Committee or the Debtors.

The Liquidation Trustee shall, subject to further order of the Bankruptcy Court, upon written request, provide copies of all invoices for fees and expenses incurred by a professional rendering services to the Liquidation Trustee or the Liquidation Trust, to the Holders of Professional Fee Claims, the members of the Committee (notwithstanding the dissolution of the Committee on the Effective Date), and to any Beneficiary until such time as the Allowed amount of the claim of such requesting party has been paid in full, otherwise been resolved, or been disallowed.

### 9.    Compensation of Liquidation Trustee

In addition to reimbursement for actual out-of-pocket expenses incurred by the Liquidation Trustee, the Liquidation Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Liquidation Trust on terms consistent with the Liquidation Trust Agreement.

The Liquidation Trustee shall, subject to further order of the Bankruptcy Court, upon written request, provide copies of all invoices for fees and expenses incurred by the Liquidation Trustee to any Holders of Professional Fee Claims, the members of the Committee (notwithstanding the dissolution of the Committee on the Effective Date) and to any Beneficiary until such time as the Allowed amount of the claim of such requesting party has been paid in full, otherwise been resolved, or been disallowed.

### 10.    Resignation of Liquidation Trustee

The Liquidation Trustee may resign at any time. The Liquidation Trustee shall file such written resignation with the Bankruptcy Court and shall serve such written resignation on the Post-Confirmation Service List. Any party in interest may request a hearing before the Bankruptcy Court regarding the Liquidation Trustee's resignation. If no such hearing is requested, the resignation shall take effect thirty (30) days after the filing of the notice of resignation with the Bankruptcy Court. The resigning Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Trust Assets that were in the possession of the resigning Liquidation Trustee along with a complete record and inventory of all such Trust Assets.

### 11.    Removal of Liquidation Trustee

The Bankruptcy Court may remove a Liquidation Trustee for good cause shown on a motion submitted by a Beneficiary of the Liquidation Trust or the U.S. Trustee following notice to parties in interest, including without limitation, other Beneficiaries, the Post-Confirmation Service List, and the Liquidation Trustee. The removal will take effect upon the date the

24

Bankruptcy Court specifies.  Any removed Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Trust Assets that were in the possession of the removed Liquidation Trustee along with a complete record and inventory of all such Trust Assets.

### 12.    Successor Liquidation Trustee

Any vacancy in the office of Liquidation Trustee shall be filled by the nomination of a majority of the participating members of the Committee (notwithstanding the dissolution of the Committee on the Effective Date), subject to the approval of the Bankruptcy Court, after at least fourteen (14) days' notice of such nomination shall have been provided to Beneficiaries and the Post-Confirmation Service List, with an opportunity to object and be heard in connection therewith.  If at least three (3) members of the Committee do not participate in the nomination of a successor Liquidation Trustee within twenty (20) days after the Liquidation Trustee files a written notice of resignation or otherwise becomes unable to serve, the Bankruptcy Court shall designate a successor after a hearing on notice to Beneficiaries and the Post-Confirmation Service List.

Any successor Liquidation Trustee's acceptance of appointment as a successor Liquidation Trustee shall be in writing and shall be filed with the Bankruptcy Court, with a copy served on Beneficiaries and the Post-Confirmation Service List.  The acceptance shall become effective when filed with the Bankruptcy Court.  The Liquidation Trustee shall thereupon be considered a Liquidation Trustee of the Liquidation Trust without the necessity of any conveyance or instrument.  Each successor Liquidation Trustee shall have all of the rights, powers, duties, authority, and privileges as if named as the initial Liquidation Trustee hereunder.  Each successor Liquidation Trustee shall be exempt from any liability related to the acts or omissions of any prior Liquidation Trustee.

### 13.    Records

The Liquidation Trustee shall maintain good and sufficient books and records relating to the Trust Assets, Cash, Distributable Cash, Plan Reserves, the management thereof, all post-Confirmation transactions undertaken by the Liquidation Trustee, all expenses incurred by or on behalf of the Liquidation Trustee after the Effective Date, and all distributions contemplated or effectuated under the Plan.  Subject to further order of the Court, such records shall be maintained and preserved by the Liquidation Trustee until the earlier to occur of (i) entry of the final decree closing the Chapter 11 Cases and (ii) termination of the Liquidation Trust.

### 14.    Liability of the Liquidation Trustee

The Liquidation Trustee shall not be personally liable for any claim asserted against the Liquidation Trust or the Liquidation Trustee, except as set forth below.  The Liquidation Trustee shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, unless the Liquidation Trustee was grossly negligent.  Notwithstanding anything to the contrary set forth herein or in the Liquidation Trust Agreement, no provision of the Plan or the Liquidation Trust Agreement shall be construed to relieve the Liquidation Trustee from liability for gross negligence, fraud or willful misconduct.

25

### 15.    **Indemnification**

From and after the Effective Date, the Liquidation Trustee and the independent contractors, employees and/or professionals employed by the Liquidation Trust (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be, and hereby are, indemnified by the Liquidation Trust, to the fullest extent permitted under applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs, and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, the Liquidation Trust Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to such Indemnified Party's own respective fraud, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing any Causes of Action or objections to Claims, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) any document or information, whether verbal or written, referred to herein or supplied to the Liquidation Trustee; or (iv) proceedings by or on behalf of any claimant or Creditor. Subject to the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trust shall, on demand, advance or pay promptly, in either case from the Post-Effective Date Trust Expense Reserve, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the gross negligence, fraud, or willful misconduct of such Indemnified Party. Any person entitled to indemnification hereunder shall have the right to employ such person's own separate counsel in any such action, payable solely from the Post-Effective Date Trust Expense Reserve, subject to the terms and conditions of the Plan.

An Indemnified Party seeking indemnification (including any advancement) from the Liquidation Trust shall file with the Bankruptcy Court a motion for indemnification or advancement, on notice to the U.S. Trustee, the Post-Confirmation Service List, and any known party whose rights may be affected by such motion. Absent an order of the Bankruptcy Court, no Trust Assets shall be used to advance or otherwise pay any sums to or for the benefit of any Indemnified Party in connection with an indemnification.

The Liquidation Trustee is authorized, but not required, to obtain and purchase (solely from funds in the Post-Effective Date Trust Expense Reserve) insurance coverage with respect to the responsibilities, liabilities, and obligations of the Indemnified Parties under the Plan.

### C.    **The Source of Distributions**

The sources of all distributions and payments under the Plan are the Trust Assets (or proceeds of any Trust Assets), including without limitation Cash and Distributable Cash,

26

proceeds of all Causes of Action, all rights and claims with respect to any recoveries related to the issuance of the Bond and the Letter of Credit draw, and proceeds of or recoveries from any other remaining property of the Debtors and their Estates.

**D.     Provision for Treatment of Disputed Administrative Expense Claims and Disputed Claims**

Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, the Liquidation Trustee shall have the exclusive right to (i) amend the Schedules and (ii) object to the allowance of Administrative Expense Claims or Claims that have been filed with the Bankruptcy Court. All objections may be litigated to Final Order; provided, however, that the Liquidation Trustee may compromise and settle any Administrative Expense Claim, Professional Fee Claim, or Claim without the approval of the Bankruptcy Court unless such approval is otherwise required by the terms of the Plan. At such time as a Disputed Administrative Expense Claim, Disputed Professional Fee Claim, or Disputed Claim becomes Allowed, as applicable, either by entry of a Final Order or a settlement reached with the Liquidation Trustee, the Holder thereof will receive, as soon as practicable thereafter, the distributions to which such Holder is then entitled under the Plan.

**E.     Abandonment of Property**

If and to the extent the Liquidation Trustee determines to abandon any Trust Assets, then the Liquidation Trustee may abandon such assets in accordance with the Plan or any further order of the Court on no less than fourteen (14) days' written notice to Beneficiaries and the Post-Confirmation Service List.

**F.     Distribution of Property Under the Plan**

**1.     Manner of Cash Payments**

Cash payments to domestic Holders of Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidation Trustee or, at the Liquidation Trustee's option, by wire transfer from a domestic bank. Cash payments to foreign Holders of Allowed Claims may be paid, at the Liquidation Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

**2.     Setoff and Recoupment**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE LIQUIDATION TRUSTEE, ON BEHALF OF THE LIQUIDATION TRUST, MAY SETOFF, RECOUP, OR WITHHOLD AGAINST DISTRIBUTIONS ON ACCOUNT OF ANY CLAIM OR ANY ADMINISTRATIVE EXPENSE CLAIM, ANY CLAIMS THAT A DEBTOR, THE ESTATES, OR THE LIQUIDATION TRUST MAY HAVE AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM. THE LIQUIDATION TRUST AND THE LIQUIDATION TRUSTEE WILL NOT BE DEEMED TO WAIVE OR RELEASE ANY CLAIM AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM OR**

27

**ADMINISTRATIVE EXPENSE CLAIM, AS APPLICABLE, AGAINST THE DEBTORS OR THE LIQUIDATION TRUST; OR BY MAKING A DISTRIBUTION ON ACCOUNT OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM.**

### 3. No *De Minimis* Distributions

Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $50 will be made by the Liquidation Trustee to any Holder of an Allowed Claim. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this section.

If the amount of any Distribution to be made pursuant to the Plan on account of an Allowed Claim would be less than $50, the Liquidation Trustee will not pay such Distribution and will hold such Distribution for the benefit of the Holder of such Allowed Claim. When and if the aggregate amount of Distributions on account of such Allowed Claim totals at least $50, the Liquidation Trustee will distribute such Distributions to the Holder of such Allowed Claim in accordance with the terms of the Plan.

If, at the time a final Distribution is to be made under the Plan, the aggregate amount of Distributions held by the Liquidation Trustee for the benefit of a Holder of an Allowed Claim total less than $50, then (i) such Distributions shall not be paid to such Holder and such Distributions shall vest in the Liquidation Trust and be distributed to other Holders of Allowed Claims in accordance with the terms of the Plan, and (ii) the Holder of such Allowed Claim will be forever barred from receiving such Distribution or asserting any claim against the Liquidation Trust, the Trust Assets, or the Liquidation Trustee on account of such Allowed Claim.

### 4. No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim or is deemed to be an Allowed Claim for Distribution purposes.

### 5. Undeliverable or Unclaimed Distributions

Distributions to Beneficiaries holding Allowed Claims will initially be made by U.S. mail as follows:

(a) Distributions will be sent to the address, if any, (i) set forth on a filed Proof of Claim, as amended by any written notice of address change filed on the Docket for these Chapter 11 Cases no later than ten (10) Business Days prior to the date of any Distribution, or (ii) such other address as the Beneficiary provides to the Liquidation Trustee in writing (including via email) at least thirty (30) days prior to the date of such Distribution; or

(b) If no such address is available, distributions will be sent to the address set forth on the Schedules.

If no address is available as set forth above, the Distribution will be deemed to be undeliverable. If a Distribution is returned to the Liquidation Trustee as an undeliverable Distribution, or is deemed to be an undeliverable Distribution, the Liquidation Trustee shall

28

make no further Distribution to the entity holding the Allowed Claim on which the Distribution is being made unless and until the Liquidation Trustee is timely notified in writing of that entity's current address.

If, at the time a final Distribution is to be made under the Plan, the Liquidation Trustee is holding an undeliverable Distribution for any Allowed Claim for which the Liquidation Trustee has not received written notice of the current address of the entity holding such Allowed Claim, then (i) such Distribution shall vest in the Liquidation Trust and be distributed to other Holders of Allowed Claims in accordance with the terms of the Plan and (ii) the entity holding such Allowed Claim will be forever barred from receiving such undeliverable Distribution or asserting any claim against the Liquidation Trust, the Trust Assets, or the Liquidation Trustee. Nothing contained in the Plan shall be deemed to require the Liquidation Trustee to attempt to locate any entity holding an Allowed Claim whose Distribution is undeliverable.

If an instrument delivered as a Distribution to a Beneficiary is not negotiated within one hundred and eighty (180) days after such instrument was sent to the Beneficiary, then the instrument shall be null and void and payment thereon shall be stopped, the Beneficiary shall be deemed to have waived any right to receive such Distribution on account of its Allowed Claim, and the applicable funds shall be used otherwise by the Liquidation Trustee in accordance with the terms of the Plan.

## VIII.
## LITIGATION

### A.  Preservation of Causes of Action

The Liquidation Trustee shall, for all purposes, retain, and may exclusively enforce, any and all claims, rights, or Causes of Action (including, without limitation, Avoidance Actions), whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, an adversary proceeding filed in these Chapter 11 Cases. The Liquidation Trustee shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise on any reasonable terms any and all claims, rights and Causes of Action, and shall not be required to seek prior approval from the Bankruptcy Court to do so, except as otherwise provided in the Plan, and shall have the full rights and powers to commence and pursue any such Cause of Action (including, without limitation, any Avoidance Action), on or after the Effective Date.

Specifically, and without limitation, the following Causes of Action shall vest in the Liquidation Trust: (i) all Avoidance Actions; (ii) all Causes of Action against any of the Debtors' current or former Insiders; (iii) all Causes of Action against Rio; (iv) all claims for recoveries relating to the issuance of the Bond and the related letter of credit draw; and (v) all claims against any Person regarding the termination, modification or withdrawal of any license agreement between any of the Debtors and such Person.

The Liquidation Trustee shall have authority to exercise and perform the rights, powers and duties of the Estates, including without limitation the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims

and interests of the Estates or the Liquidation Trust, including, but not limited to all Causes of Action (including, without limitation, Avoidance Actions).

Unless a claim or Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or in any Final Order, all claims and Causes of Action are expressly reserved for later adjudication (including without limitation, claims and Causes of Action which the Liquidation Trustee, the Debtors or the Creditors' Committee may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown at this time, or facts or circumstances which may change or be different from those now believed to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Causes of Action upon, or after, the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims or Causes of Action have been released in the Plan or other Final Order.

Any Person to whom the Debtors have incurred an obligation (whether on account of the provision of goods, services or otherwise), or who has received goods or services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee on behalf of the Liquidation Trust, subsequent to the Effective Date and may, if appropriate, be the subject of a filed action or other proceeding after the Effective Date, regardless of whether (i) such Person or entity has filed a Proof of Claim against the Debtors in these Chapter 11 Cases; (ii) such Person's or entity's Proof of Claim has been objected to; (iii) such Person's or entity's Claim was included in the Schedules; or (iv) such Person's or entity's scheduled Claims have been objected to or have been identified as disputed, contingent, or unliquidated.

**THE LIQUIDATION TRUSTEE WILL MAKE THE DECISION OF WHETHER OR NOT TO PURSUE ANY CAUSES OF ACTION AND TO SETTLE OR NOT SETTLE CAUSES OF ACTION. THIS DECISION WILL BE BASED UPON THE LIQUIDATION TRUSTEE'S REVIEW OF THE MERITS OF THE VARIOUS CAUSES OF ACTION AS WELL AS THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION IN LIGHT OF THE LIMITED RESOURCES AVAILABLE FOR DISTRIBUTION TO CREDITORS. THE LIQUIDATION TRUSTEE (I) MAY SEEK TO RETAIN COUNSEL ON ANY REASONABLE TERMS, INCLUDING ON A CONTINGENCY BASIS, TO PROSECUTE SOME OR ALL CAUSES OF ACTION, (II) SEEK TO FINANCE ANY COSTS RELATING TO THE PROSECUTION OF SUCH LITIGATION, OR (III) DECIDE NOT TO PURSUE SUCH CAUSES OF ACTION AT ALL. THE LIQUIDATION TRUSTEE AND HIS OR HER FIRMS, PARTNERS, MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, PROFESSIONALS, SUCCESSORS AND ASSIGNS SHALL HAVE NO LIABILITY ARISING OUT OF THE GOOD FAITH DETERMINATIONS OF THE LIQUIDATION TRUSTEE OF WHETHER OR NOT TO PURSUE PROSECUTION OF AND/OR THE SETTLEMENT OF ANY CAUSES OF ACTION PURSUANT TO THE TERMS OF THE PLAN.**

30

The Plan preserves all claims and Causes of Action against any and all third parties, including, but not limited to, Insiders, all creditors and interest holders, and others. Nothing contained in this Disclosure Statement or in the Plan shall be construed as an acknowledgement or concession regarding the existence or validity of any claim or Cause of Action.

## IX.
## EXCULPATION AND INJUNCTION

### A.    Term of Bankruptcy Injunction or Stay

Except as otherwise expressly provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and which are in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### B.    Exculpation for Estate Fiduciaries

**Upon the occurrence of the Effective Date, none of the Debtors, the Debtors' officers and directors who provided service from and after the Petition Date, the Debtors' managers, employees, members, agents, and any Professionals employed by the Debtors pursuant to an order of the Bankruptcy Court (each acting in such capacity after the Petition Date), the Creditors' Committee, its members, and its Professionals employed pursuant to an order of the Bankruptcy Court, shall have or incur any liability to any Person for any action taken or omitted to be taken during the period from the Petition Date through and including the Effective Date in connection with or related to or arising out of, the filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, any motion, order, release, settlement, transaction, or other agreement or document created or entered into or approved by the Bankruptcy Court, or any other Postpetition action taken or omitted to be taken in connection with the Plan or any other matter or proceeding in the Chapter 11 Cases, and all claims or causes of action based upon or arising out of any such actions or omissions are forever enjoined, barred, waived and released; provided, however, that nothing contained in the Plan shall affect the liability of any Person arising from any act, omission, transaction, agreement, event or other occurrence constituting willful misconduct, gross negligence, fraud or criminal conduct; provided, further, that nothing in this Article IX.B shall be deemed to prohibit any objection to any Administrative Expense Claim or Professional Fee Claim in accordance with the terms of the Plan, orders of the Bankruptcy Court, and/or the Bankruptcy Code.**

### C.    Injunction

**The Plan provides, and the Confirmation Order shall provide, among other things, that any Person (other than the Debtors, the Creditors' Committee, the Debtors' Estates or the Liquidation Trustee) who has held, holds, or may hold a claim against, interest in, or right with respect to the Debtors' Estates, the Assets, the Liquidation Trust, or the Trust Assets, or any claim against or interest in the Debtors, the Debtors' Estates or the Liquidation Trust for which the Debtors' Estates or the Liquidation Trust are or may be liable is, with respect to any such claim, interest, or right, permanently enjoined from and after the Effective Date from taking any of the following actions (other than actions taken**

31

in the Bankruptcy Court or in any of the Chapter 11 Cases to enforce any rights or obligations under the Plan or to defend challenges to the validity or amount of a Disputed Claim), absent further order of the Bankruptcy Court: (i) asserting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting any of the Debtors' Estates, the Assets, the Liquidation Trust, or the Trust Assets, on account of any claim for which the Debtors or Liquidation Trustee are directly or indirectly liable, including without limitation, by way of contribution, indemnity or otherwise; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any of the Debtors' Estates, the Assets, the Liquidation Trust, or the Trust Assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against the Debtors' Estates, the Assets, the Liquidation Trust, or the Trust Assets; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (v) prosecuting, commencing, continuing or otherwise asserting any right, claim or cause of action released pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan against the Debtors' Estates, the Assets, the Liquidation Trust, or the Trust Assets; and (vi) acting to obtain possession of the Trust Assets or to exercise control over the Trust Assets or any rights or interests of the Debtors, their Estates, the Liquidation Trust, or the Liquidation Trustee with respect to the Assets or the Trust Assets. If the Liquidation Trustee, the Trust Assets or the Debtors Estates are injured by any willful violation of such injunction, the Liquidation Trustee shall be entitled to seek actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages, from the willful violator(s). Notwithstanding the foregoing, holders of Disputed Claims are not enjoined from and shall retain all rights to defend or prosecute such Disputed Claims in the Bankruptcy Court, including, without limitation, the right to assert affirmative defenses, setoff, or recoupment, if applicable. Nothing herein shall impair or delay any rights of any Holder of a Claim against the Debtors, their Estates, the Assets, the Liquidation Trust, or the Trust Assets, to pursue any action against any third party (including, without limitation, Insiders) who may be directly liable to such Holder.

Nothing contained in this Article IX.C shall be construed to in any way enjoin, prevent, or limit the Liquidation Trustee's rights, power, and authority under the Plan and the Liquidation Trust Agreement.

### D.    Preservation of Insurance

The provisions of the Plan and the Confirmation Order shall not diminish or impair the enforceability of any insurance policies that may cover claims against any Debtor or any other Person or prevent any Person from seeking or enforcing coverage with respect to any claim under any applicable insurance policies of the Debtors. The Liquidation Trustee shall be authorized, in his or her sole discretion, to pay from the Post-Effective Date Trust Expense Reserve any fees, expenses, or premiums necessary to maintain such insurance coverage.

140999.01600/106069177v.1

**E.    Binding Effect**

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim, Administrative Expense Claim, or Professional Fee Claim against, or Interest in, the Debtors and their respective successors and assigns, whether or not the Claim, Administrative Expense Claim, Professional Fee Claim, or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

## X.
## OTHER PLAN PROVISIONS

**A.    The Effective Date**

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first Business Day after the following conditions have been satisfied:

(1)    The Confirmation Order, in a form reasonably acceptable to the Debtors and to the Creditors' Committee, shall have been entered by the Bankruptcy Court;

(2)    The Confirmation Order is not stayed;

(3)    The Liquidation Trustee and Plan Proponents shall have signed the Liquidation Trust Agreement; and

(4)    No material adverse effect has occurred in respect of the Assets.

Each of the above conditions precedent may be waived in whole or in part by the Plan Proponents without further notice or order of the Bankruptcy Court.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

Subject to further order of the Court, if the Effective Date does not occur within ninety (90) days after entry of a Final Order confirming the Plan, the Plan Proponents reserve the right, in their sole and absolute discretion, to determine jointly that the Plan shall have become null and void.  A joint notice shall be filed with the Court within three (3) Business Days after the occurrence of the Effective Date or any event that renders the Plan null and void.

**B.    Dissolution of the Board of Directors, Dismissal of Officers and Directors, and Termination of Creditors' Committee**

Upon the Effective Date, the existing board of directors of any Debtor shall be deemed dissolved, and any remaining director, officer, employee, or independent contractor of any Debtor shall be dismissed, and each of the Debtors' directors, officers, employees, independent contractors, members, designated representatives, agents, and Professionals employed pursuant to a Bankruptcy Court order shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Debtors or the Chapter 11 Cases.

33

Each of the matters provided for under the Plan involving any corporate action to be taken by the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the respective Debtor's board of directors or managers. Without limiting the foregoing, including, without limitation, this Article X.B, the Liquidation Trustee is hereby authorized in his sole discretion, to dissolve or otherwise terminate on or after the Effective Date (i) a Debtor's existence, by filing a certificate of dissolution and a copy of the Confirmation Order with the secretary of state of their respective state of incorporation or state of formation, (ii) the existence of wholly-owned non-Debtor affiliates or subsidiaries, or (iii) any remaining health, welfare or benefit plans. As of the Effective Date, neither the Debtors nor the Liquidation Trustee shall be required to file any document, or take any other action, to withdraw any Debtor's business operation from any state in which it previously conducted business operations. The Confirmation Order shall contain language addressed to the appropriate Governmental Units to such effect.

From and after the Effective Date, the Debtors and their counsel are authorized, but not directed, to act on behalf of the Estates solely with respect to (i) all the applications filed pursuant to section 330 of the Bankruptcy Code seeking payment of fees and expenses incurred by any Professional, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the provisions of the Plan or the Confirmation Order, and (iii) providing such information, books and records as may be reasonably requested by the Liquidation Trustee on behalf of the Liquidation Trust. The Debtors, their employees, officers, directors and their respective counsel shall not be entitled to any compensation from the Trust Assets for any actions taken pursuant to this paragraph, except for reasonable out-of-pocket expenses (but not professional fees).

Upon the Effective Date, the Creditors' Committee shall cease to exist and its members, designated representatives, agents, and Professionals employed pursuant to a Bankruptcy Court order shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Creditors' Committee or the Chapter 11 Cases. The Creditors' Committee shall continue to exist after such date solely with respect to (i) all the applications filed pursuant to section 330 of the Bankruptcy Code seeking payment of fees and expenses incurred by any Professional, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the provisions of the Plan or the Confirmation Order, and (iii) providing such information, books and records as may be reasonably requested by the Liquidation Trustee on behalf of the Liquidation Trust. The Creditors' Committee and its Professionals shall not be entitled to any compensation from the Trust Assets for any actions taken pursuant to this paragraph, except for reasonable out-of-pocket expenses (but not professional fees).

The Debtors, the Creditors' Committee and the Liquidation Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and provisions of the Plan.

34

### C.    Executory Contracts and Unexpired Leases

#### 1.    Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all agreements executed by the Debtors before the Effective Date, other than agreements that were previously either assumed and assigned or rejected by a Final Order, to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365, shall be rejected. The Confirmation Order shall constitute a Final Order under Bankruptcy Code section 365 approving such rejection.

#### 2.    Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidation Trustee and his or her counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtors, the Estates, the Liquidation Trust, and the Liquidation Trustee, and their property, and the entities holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Liquidation Trustee shall have the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than one hundred twenty (120) days after the Effective Date, absent further order of the Bankruptcy Court.

### D.    Entry of a Final Decree

Promptly following the completion of all Distributions contemplated by the Plan and the full administration of all Trust Assets, the Liquidation Trustee will file a motion with the Bankruptcy Court seeking entry of a final decree closing these Chapter 11 Cases.

### E.    U.S. Trustee Fees and Quarterly Reports

From and after the Effective Date, pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) and any applicable interest pursuant to 31 U.S.C. § 3717 shall be paid by the Liquidation Trustee from the Post-Effective Date Trust Expense Reserve. After the Effective Date, the Liquidation Trustee shall (i) file post-confirmation quarterly disbursement reports and quarterly status reports of funds on hand, distributions made since the previous report, a brief description of any pending litigation and a listing of any claim objections or settlements the Liquidation Trustee has entered into since the previous report, with copies of all such reports served on the Post-Confirmation Service List, and (ii) pay from the Post-Effective Date Trust Expense Reserve all quarterly fees to the U.S. Trustee which are required by applicable law. The Liquidation Trustee shall include in the Post-Effective Date Trust Expense Reserve reasonably sufficient monies to cover the quarterly fees of the U.S. Trustee incurred, or to be incurred, after the Effective Date.

### F.    Post-Effective Date Effect of Evidences of Claims

Commencing on the Effective Date, notes and other evidences of Allowed Claims will represent only the right to receive the Distributions contemplated under the Plan.

G.    [Reserved]

H.    **Cancellation of Interests**

On the Effective Date, all Interests in Hampshire Group, Limited, Hampshire Brands, Inc. and Hampshire International, LLC will be cancelled, annulled, and extinguished, and any issued and outstanding shares of common stock, preferred stock, stock options, warrants, membership interests, or other evidence of Interests (excluding those held by a Debtor) will be deemed cancelled and of no further force or effect without any further action by the Debtors or any other entity. Persons holding Interests will retain no rights and receive no consideration or Distribution under the Plan on account of their Interests, and entities holding any evidence of Interests (excluding those held by a Debtor) will have no rights arising from or relating to such evidence of their Interests or their cancellation.

I.    **Nondischarge of the Debtors' Debts**

1.    **Nondischarge of the Debtors**

In accordance with Bankruptcy Code section 1141(d)(3), the Confirmation Order will not discharge Claims as against the Debtors.

2.    **Prohibition from Taking Certain Actions**

Notwithstanding Article X.I.1 above, no Person or entity holding a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Person or entity under the Plan. As of the Confirmation Date, all Persons and entities are precluded from asserting against any property that is to be distributed under the Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.

J.    **No Recourse**

No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Liquidation Trust, the Liquidation Trustee, the Trust Assets, the Debtors or their Estates in connection with such Person's Administrative Expense Claim, Professional Fee Claim, or Claim, other than the right to receive Distributions in accordance with the terms of the Plan.

K.    **No Admissions**

Notwithstanding anything to the contrary contained in the Plan, if the Plan is not confirmed, is revoked or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (1) be deemed an admission by any of the Plan Proponents with respect to any matter discussed in the Plan, including liability on any Claim, Administrative Expense Claim, or Professional Fee Claim, or the propriety of any classification or treatment of same contained in the Plan; (2) constitute a waiver, acknowledgement, or release of any claims, Interests, or Causes of Action of the Debtors, their Estates, and/or the Liquidation Trust; or (3) prejudice in any manner the rights of the Plan Proponents or any other Person in any further proceedings.

36

**L.    Revocation of the Plan**

The Plan Proponents reserve the right to withdraw the Plan before the Confirmation Date.

**M.    Severability of Plan Provisions**

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted, except if such term or provision is inconsistent with the intent of any of the Plan Proponents, in which case the Plan may be unilaterally withdrawn by such Plan Proponent. Notwithstanding any such holding, alteration, or interpretation, and unless the Plan has been withdrawn, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article X.M, is valid and enforceable under its terms.

**N.    Governing Law**

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, Delaware law without giving effect to Delaware's conflicts of law principles, unless a rule of law or procedure is supplied by: (1) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (2) an enforceable, express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

**O.    Retention of Jurisdiction**

The Bankruptcy Court will retain and have exclusive jurisdiction:

(1) to hear and determine objections to Claims, Administrative Expense Claims, and Professional Fee Claims;

(2) to hear and determine any dispute arising under the Plan or the Liquidation Trust Agreement, including the implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct the Plan or the Liquidation Trust Agreement;

(3) to grant extensions of any deadlines set forth in the Confirmation Order or the Plan as may be appropriate;

(4) to hear and determine any matter regarding the existence, nature, scope, and enforceability of any exculpation, stay, release, or injunction provided for under the Plan;

(5) to hear and determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that are instituted by the Liquidation Trustee or the Liquidation Trust after the Effective Date, including without limitation all Causes of Action (including, without limitation, Avoidance Actions);

140999.01600/106069177v.1

(6) to hear and determine motions for or objections to the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of claims resulting from the assumption or rejection of any executory contract or lease;

(7) to ensure that Distributions to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims are accomplished as provided herein;

(8) to resolve disputes as to the ownership of any Claim, Administrative Expense Claim, or Professional Fee Claim;

(9) to hear and determine any disputes relating to or in connection with the retention, employment, compensation, liability, indemnification, resignation, removal, or nomination of the Liquidation Trustee;

(10) to hear and determine any disputes relating to or in connection with the employment, compensation, liability, indemnification, resignation, or termination of any independent contractor, employee, or professional employed by the Liquidation Trustee or the Liquidation Trust;

(11) to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(12) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(13) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(14) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(15) to hear and determine any issue for which the Plan requires a Final Order of the Court;

(16) to hear and determine matters concerning state, local, or federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(17) to hear and determine all Causes of Action preserved under the Plan, including, without limitation, all Causes of Action under sections 541, 542, 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3) of the Bankruptcy Code; and

(18) to enter a final decree closing one or more of the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article X.O shall not effect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter. The principal objective of the Plan is to maximize the recovery to the Beneficiaries, and the retention of jurisdiction by the Bankruptcy Court shall be interpreted in a manner to accomplish that objective.

**P.**      <u>Successors and Assigns</u>

Unless otherwise specified in the Plan, the rights, benefits, and obligations of any entity referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

**Q.**      <u>Saturday, Sunday, or Legal Holiday</u>

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

## XI.
## CONFIRMATION

**A.**      <u>Plan Modification</u>

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Plan Proponents reserve the right to jointly alter, amend, or modify the Plan before it is substantially consummated.

**B.**      <u>Acceptance</u>

If Class 2 fails to accept the Plan, and the Plan Proponents therefore cannot confirm the Plan in accordance with Bankruptcy Code section 1129(a)(10), the Plan Proponents reserve the right to modify the Plan in accordance with Bankruptcy Code section 1127(a), to withdraw the Plan before the Confirmation Date, or to seek other relief from the Bankruptcy Court.

## XII.
## RECOMMENDATIONS AND CONCLUSION

The Plan Proponents strongly believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Claimants and Creditors holding Claims with significantly greater opportunities for recoveries than any available alternatives. The Plan Proponents recommend that Holders of Allowed Claims in Class 2 (General Unsecured Claims) vote to accept the Plan.

140999.01600/106069177v.1

Dated: August 17, 2017

| HAMPSHIRE GROUP, LIMITED, HAMPSHIRE BRANDS, INC., AND HAMPSHIRE INTERNATIONAL, LLC | OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HAMPSHIRE GROUP, LTD. *ET AL.* |

William Drozdowski
Chief Financial Officer

Richard S. Lauter for I-Mar LLC
Its Co-Chairperson

Robert Lash for Onewoo Corporation
Its Co-Chairperson

**BLANK ROME LLP**

**PACHULSKI STANG ZIEHL & JONES LLP**

Michael D. DeBaecke (DE No. 3186)
Bryan J. Hall (DE No. 6285)
1201 N. Market Street
Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
E-mail: debaecke@blankrome.com
        bhall@blankrome.com

*Counsel for the Debtors and Debtors-in-Possession*

Richard E. Mikels (admitted *pro hac vice*)
Ilan D. Scharf (admitted *pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
Steven W. Golden
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:  rmikels@pszjlaw.com
         ischarf@pszjlaw.com
         pkeane@pszjlaw.com
         sgolden@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors of Hampshire Group Ltd., et al.*

40

Dated: August 17, 2017

| | |
|---|---|
| **HAMPSHIRE GROUP, LIMITED, HAMPSHIRE BRANDS, INC., AND HAMPSHIRE INTERNATIONAL, LLC** | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HAMPSHIRE GROUP, LTD. ET AL.** |

_____

William Drozdowski
Chief Financial Officer

_____

Richard S. Lauter for I-Mar LLC
Its Co-Chairperson

_____

Robert Lash for Onewoo Corporation
Its Co-Chairperson

**BLANK ROME LLP**

*Michael DeBaecke*

_____

Michael D. DeBaecke (DE No. 3186)
Bryan J. Hall (DE No. 6285)
1201 N. Market Street
Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
E-mail: debaecke@blankrome.com
       bhall@blankrome.com

*Counsel for the Debtors and
Debtors-in-Possession*

**PACHULSKI STANG ZIEHL & JONES LLP**

_____

Richard E. Mikels (admitted *pro hac vice*)
Ilan D. Scharf (admitted *pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
Steven W. Golden
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:  rmikels@pszjlaw.com
       ischarf@pszjlaw.com
       pkeane@pszjlaw.com
       sgolden@pszjlaw.com

*Counsel for the Official Committee of Unsecured
Creditors of Hampshire Group Ltd., et al.*

40

Dated: August 17, 2017

**HAMPSHIRE GROUP, LIMITED,**              **OFFICIAL COMMITTEE OF UNSECURED**
**HAMPSHIRE BRANDS, INC., AND**            **CREDITORS OF HAMPSHIRE GROUP,**
**HAMPSHIRE INTERNATIONAL, LLC**           **LTD.** *ET AL.*

_____           _____
William Drozdowski                         Richard S. Lauter for I-Mar LLC
Chief Financial Officer                    Its Co-Chairperson


                                           _____
                                           Robert Lash for Onewoo Corporation
                                           Its Co-Chairperson


**BLANK ROME LLP**                         **PACHULSKI STANG ZIEHL & JONES LLP**


_____           _____
Michael D. DeBaecke (DE No. 3186)          Richard E. Mikels (admitted *pro hac vice*)
Bryan J. Hall (DE No. 6285)                Ilan D. Scharf (admitted *pro hac vice*)
1201 N. Market Street                      Peter J. Keane (DE Bar No. 5503)
Suite 800                                  Steven W. Golden
Wilmington, Delaware 19801                 919 North Market Street, 17th Floor
Telephone: (302) 425-6400                  Wilmington, Delaware 19801
Facsimile: (302) 425-6464                  Telephone: (302) 652-4100
E-mail: debaecke@blankrome.com             Facsimile: (302) 652-4400
        bhall@blankrome.com                E-mail:  rmikels@pszjlaw.com
                                                    ischarf@pszjlaw.com
*Counsel for the Debtors and*                       pkeane@pszjlaw.com
*Debtors-in-Possession*                             sgolden@pszjlaw.com

                                           *Counsel for the Official Committee of Unsecured*
                                           *Creditors of Hampshire Group Ltd., et al.*

40

140999.01600/106069177v.1

Dated: August 17, 2017

| | |
|---|---|
| **HAMPSHIRE GROUP, LIMITED,** | **OFFICIAL COMMITTEE OF UNSECURED** |
| **HAMPSHIRE BRANDS, INC., AND** | **CREDITORS OF HAMPSHIRE GROUP,** |
| **HAMPSHIRE INTERNATIONAL, LLC** | **LTD. *ET AL.*** |

---

William Drozdowski
Chief Financial Officer

---

Richard S. Lauter for I-Mar LLC
Its Co-Chairperson

---

Robert Lash for Onewoo Corporation
Its Co-Chairperson

**BLANK ROME LLP**

**PACHULSKI STANG ZIEHL & JONES LLP**

---

Michael D. DeBaecke (DE No. 3186)
Bryan J. Hall (DE No. 6285)
1201 N. Market Street
Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
E-mail: debaecke@blankrome.com
          bhall@blankrome.com

*Counsel for the Debtors and*
*Debtors-in-Possession*

---

Richard E. Mikels (admitted *pro hac vice*)
Ilan D. Scharf (admitted *pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
Steven W. Golden
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:  rmikels@pszjlaw.com
          ischarf@pszjlaw.com
          pkeane@pszjlaw.com
          sgolden@pszjlaw.com

*Counsel for the Official Committee of Unsecured*
*Creditors of Hampshire Group Ltd., et al.*

40

Dated: August 17, 2017

| | |
|---|---|
| **HAMPSHIRE GROUP, LIMITED, HAMPSHIRE BRANDS, INC., AND HAMPSHIRE INTERNATIONAL, LLC** | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HAMPSHIRE GROUP, LTD. *ET AL.*** |

_____
William Drozdowski
Chief Financial Officer

_____
Richard S. Lauter for I-Mar LLC
Its Co-Chairperson


_____
Robert Lash for Onewoo Corporation
Its Co-Chairperson


**BLANK ROME LLP**

**PACHULSKI STANG ZIEHL & JONES LLP**

_____
Michael D. DeBaecke (DE No. 3186)
Bryan J. Hall (DE No. 6285)
1201 N. Market Street
Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
E-mail: debaecke@blankrome.com
        bhall@blankrome.com

*Counsel for the Debtors and
Debtors-in-Possession*

_____
Richard E. Mikels (admitted *pro hac vice*)
Ilan D. Scharf (admitted *pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
Steven W. Golden
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:  rmikels@pszjlaw.com
         ischarf@pszjlaw.com
         pkeane@pszjlaw.com
         sgolden@pszjlaw.com

*Counsel for the Official Committee of Unsecured
Creditors of Hampshire Group Ltd., et al.*

140999.01600/106069177v.1